THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

Zandra Westenkirchner,
2350 Houston Lake Rd
Apt 1301
Kathleen, GA 31047,

Lisa Metzger,
20392 Old Sandbar Rd.
Oakboro, NC 28129, and

Mark Metzger,
20392 Old Sandbar Rd.
Oakboro, NC 28129,

     *On behalf of themselves and others
     similarly situated,*

       Plaintiffs,
   v.

Voice of Choice, Inc.,
c/o Todd Stave,
11403 Spice Oak Terrace
Rockville, MD  20850,

Todd Stave (in his personal capacity), and
Voice of Choice, Inc.,
11403 Spice Oak Terrace
Rockville, MD  20850, and

Wendy Robinson,
402 King Farm Blvd.            Civil Action No. _____
Suite 125-141
Rockville, MD 20850,

       Defendants.
  *      *      *      *      *      *      *

## CLASS ACTION COMPLAINT
### FOR MONEY JUDGMENT AND INJUNCTIVE RELIEF

Plaintiffs, **Zandra Westenkirchner**, **Lisa Metzger**, and **Mark Metzger**, (together the

"Representative Plaintiffs") on the behalf of themselves and other persons who reside in and are

citizens of thirty-two (32) of the United States, all of whom are for the purposes of this

Complaint similarly situated, by and through their attorney, **STEVEN L. TIEDEMANN,**

*ESQUIRE*, hereby bring this action against the Defendants, **Todd Stave** ("Stave"), **Wendy**

**Robinson** ("Robinson"); and **Voice of Choice, Inc.** ("VOC") and as and for their causes of

action state:

## Parties

1.   Zandra Westenkirchner is a resident and citizen of Georgia.

2.   Lisa Metzger and Mark Metzger are residents and citizens of North Carolina.

3.   The class of additional plaintiffs proposed (which includes "Representative Plaintiffs")

consists of all persons (the "Proposed Class") listed and identified on VOC's webpage (the so-

called "Bully List") that is operated, controlled and maintained by VOC, Stave and Robinson.

4.   The Proposed Class includes the following number of persons from across the United

States, grouped by State:

| | |
|---|---|
| Alabama | 5 |
| Arkansas | 6 |
| California | 5 |
| Colorado | 9 |
| Connecticut | 3 |
| Florida | 17 |
| Georgia | 2 |
| Illinois | 10 |
| Iowa | 3 |
| Kansas | 6 |
| Louisiana | 1 |
| Maine | 3 |
| Maryland | 9 |
| Michigan | 5 |
| Mississippi | 4 |
| Missouri | 3 |
| Nebraska | 2 |
| Nevada | 2 |
| New Jersey | 1 |
| New Mexico | 2 |
| New York | 1 |
| North Carolina | 8 |

| North Dakota | 2 |
|---|---|
| Ohio | 2 |
| Oklahoma | 2 |
| Oregon | 1 |
| Pennsylvania | 2 |
| Tennessee | 2 |
| Texas | 9 |
| Virginia | 1 |
| Washington | 2 |
| Wisconsin | 2 |
| Total | 132 |

5. Stave is a resident and citizen of Maryland.

6. Stave is the founder of VOC and exercises control over VOC.

7. Robinson serves as the current "director" of VOC and lists/uses, as her business address, the VOC's Maryland address.

8. Upon information and belief, Robinson is a resident and citizen of Massachusetts.

9. VOC is a Maryland corporation with its principal place of business in Maryland and is a corporate citizen thereof.

**Jurisdiction**

10. The claims advanced herein by the Representative Plaintiffs and the Proposed Class (Counts I-VI) are (i) class action claims; (ii) seeking in excess of $5,000,000.00 exclusive of interest and costs; (iii) the proposed class has, upon information and belief, 132 members, but that number may increase over time as VOC adds persons to its "Bully List"; (iv) at least one class member is a citizen of Georgia; and (v) Defendants Stave and VOC are citizens of Maryland and Robinson may be properly sued in Maryland.

11. Thus, subject matter jurisdiction for the Representative Plaintiffs' and the Proposed Class's claims is proper pursuant to 28 U.S.C. §1332(d)(2) (class action).

**Facts Related to Class Certification**

12.  The Members of the Proposed Class are numerous, but finite (132), and easily identified for notice and other purposes.

13.  Each of the Members of the Proposed Class are similarly situated with the Representative Plaintiffs.

14.  Representative Plaintiffs ask the Court to certify the Proposed Class and include as Plaintiffs all similarly situated persons listed on VOC's website as Bullies.

15.  The Proposed Class, although finite, is so numerous that joinder of all members is impracticable.

16.  There are questions of law or fact common to the Proposed Class.

17.  The same common law, statutory, and constitutional protections apply to each member of the Proposed Class.

18.  The claims or defenses of the Representative Plaintiffs are typical of the claims or defenses of the Proposed Class.

19.  The Representative Plaintiffs will fairly and adequately protect the interests of the Class.

20.  Prosecuting separate actions by individual Proposed Class members would create a risk of inconsistent or varying adjudications with respect to individual Proposed Class members that would establish incompatible standards of conduct for the Defendants.

21.  The Defendants have acted in a manner that applies generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Proposed Class as a whole.

22.  Questions of law or fact common to Proposed Class members predominate over any questions affecting only individual members.

23.  Class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

**Venue**

24.   Venue is proper in this Court under 28 USC §1391 and 28 U.S.C. § 1400(a) because a substantial portion of the events giving rise to the claims occurred in Maryland, all Defendants are subject to personal jurisdiction in Maryland, and all Defendants may be found in Maryland.

## Background

25. VOC is a pro-abortion activist, and alleged non-profit, corporation formed by Stave.

26.   Members of the Proposed Class are, or are alleged to be, abortion clinic protestors.

27.   Stave allegedly began VOC as his "response" to some anti-abortion activists who picketed his daughter's "back-to-school" night (the "School Protest").

28.   Those protesters (who are unknown and may or may not be part of the Proposed Class) put Stave's photo and contact information on a banner at the School Protest.

29.   The alleged basis of the School Protest was that Stave is the landlord, or controlled the landlord, for a controversial late-term abortion provider, Leroy Carhart.

30.   Non-party Leroy Carhart is a late term abortionist from Nebraska well known for his opposition to, and refusal to comply with, any ban on partial-birth abortions.

31.   Despite Stave's public statements to the contrary, and as detailed below, Stave is not an "innocent bystander" in the volatile abortion debate.

32. Stave's father, Carl Edward Stave, founded the Germantown Reproductive Health Services, and Stave harbors ill-will towards abortion protestors due to, *inter alia*, a "fire-bombing" of his father's abortion center.

33. Upon his death, Carl Stave bequeathed his abortion business and/or related assets to his two children – including Stave.

34. Stave was at some point a co-owner of the Germantown Reproductive Health Services abortion business. Stave has alleged that he is merely the landlord for Germantown Reproductive Health Services.

35. Robinson is also not an innocent bystander, having sought the position as Director of VOC due to, and in support of, her sister's vocal support of late-term abortion. Specifically, Robinson's sister (non-party Susan Robinson) is one of the few remaining late-term abortionists in the United States.

36. Allegedly due to the School Protest, Stave was contacted on his home phone and email by what he called "polite" persons ("Callers") asking him to no longer lease space to Germantown Reproductive Health Services and/or to Leroy Carhart.

37. Stave did not enjoy being contacted in this manner, and stated that he found the same to be annoying and harassing.

38. The School Protestors and Callers did not seek to stop Stave from freely speaking or otherwise freely-exercising his fundamental liberty interests protected under the U.S. Constitution.

39. Stave had no fundamental right to lease property to any abortion provider.

40. The School Protestors/Callers were attempting to stop Stave from engaging in a specific type of commerce with a specific late-term abortion provider.

41. Stave admitted that his response to the School Protest/Callers was to "turn the tables" on them.

42. Stave asked his friends to call the School Protestors and Callers while Stave knew that such contact would be unwelcome, annoying and harassing.

43. According to Stave, his friends told their friends to call, and so on. Soon, thousands of persons from "across the Globe" called the School Protestors and Callers.

44. Due to the perceived success of this Stave-endorsed calling campaign, Stave founded VOC to expand the reach of his initial calling campaign beyond those specific School Protestors and Callers that had allegedly offended him.

45.   At Stave's and Robinson's instruction, VOC requests that its followers report abortion-clinic-protestors so that they can be investigated, listed on VOC's website, and labeled a "Bully".

46.   These "sidewalk" anti-abortion protesters are "hunted", "investigated", and "turned-in" by VOC-followers to the VOC website.

47.   Once a "Bully" is reported to VOC, their personal photos (including ones with their children pictured), their home address, home phone number and email addresses are published on the VOC website.

48.   The clear purpose of VOC is to mount a harassing calling/email campaign against those listed as Bullies. VOC, Robinson and Stave encourage and provide instructions for their minions to call and email the so-called Bullies repeatedly and anonymously in order to halt their anti-abortion protests.

49.   The Proposed Class members were so listed and continue to receive harassing calls, letters and emails (some overtly threatening, and all inferentially threatening) from VOC's minions.

50.   Stave has bragged that VOC's minion's number in the thousands.

51.   Stave, Robinson, and VOC slyly state that the VOC-callers should be polite, all the while eagerly providing express instructions on how VOC's minions may call and harass anonymously. Moreover, they each acknowledge that it is the number and existence of the calls/emails/letters (and not any lack of civility) that is meant to be troubling, annoying and harassing to the Proposed Class.

52.   There is a crucial difference between what the School Protestors/Callers did and what Defendants are doing.

53.   Each person in the Proposed Class (each listed as "Bullies" on VOC's website) protest at the site of abortion clinics in what is clearly the exercise of their First Amendment rights.

54. Like any protest of a commercial activity, they seek to stop the offending commercial transactions (*i.e.*, in this instance the provision of a class of abortion services) through their protected "speech".

55.  Picketing to stop undesirable commercial transactions is clearly protected conduct under the Federal Constitution's First Amendment, and the plethora of historical examples of such protected protests across the spectrum of political and other issues need not be listed here.

56.  Stave, Robinson, VOC and their followers seek to "oppress, threaten or intimidate" the Proposed Class in their future free-exercise of protected rights.

57. Stave, Robinson, VOC and their followers seek to "oppress, threaten or intimidate" the Proposed Class because they have previously exercised protected rights.

58. In an MSNBC interview with Rachel Maddow, Stave revealed that the tactics he employs are meant to "intimidate and harass and bully".  Specifically, Stave stated: "[T]he people who have called and e-mailed me are doing so in an attempt to intimidate and harass and bully me . . . . And I figured  . . . if they think [those tactics are] going to work for them, I`m going to do them back. And that`s exactly what happened."

59. Thus, Stave for himself and VOC expressly admitted to intentionally employing tactics against the Protected Class expressly and admittedly known by him (from his personal experience) to "intimidate", "harass" and "bully".

60. Stave has also stated that the purpose of VOC is to:

(i)  Make it clear that anti-abortion protestors have picked on the wrong person;

(ii)  "Fight back";

(iii)  Encourage its followers to continue to call Proposed Class members (anonymously, by providing instructions on how to do so); and

(iv)  Systematize the mass calling and emailing of anti-abortion protestors to force them to cease their Constitutionally-protected actions.

61.  VOC (under the direction of Stave and Robinson) uses its list of "Bullies" to garner publicity and traffic to its web page wherein it seeks money/cash from donors that it alleges it uses to "track individual protestors, hire investigators, hire legal counsel, print posters and photos, send mail and operate."

62.  The VOC website (controlled and managed by Stave and Robinson) uses, without permission, the photographs (taken from many sources including private and restricted social media sites) of each member of the Proposed Class for listing next to their name, home address, home and business telephone numbers, and personal email addresses.

**COUNT I – Invasion of Privacy (Appropriation of Name and Likeness)**

63.  Representative Plaintiffs restate and re-allege the contents of paragraphs 1-62 of this Complaint as if the same were set forth here in full.

64.  Defendants have intentionally taken, appropriated and used the name and likeness of each Proposed Class member for their own benefit and without permission.

65.  The Defendants have done the aforesaid in order to use the name and likenesses of each Proposed Class member to accrue commercial and monetary benefit to themselves.

66.  It is, in fact, the sole purpose of VOC (and of Stave's and Robinson's efforts in support thereof) to list the member of the Proposed Class and publish their pictures and personal information.

67.  The Defendants also solicit funds from supporters to perpetuate their addition of new persons to the "Bully" list and to pay for VOC's overhead, including the costs and expenses of Stave and Robinson.

68.  Thus, the use of the names and likenesses of the Proposed Class are not merely incidental, but are the sole purpose of, and driving force behind, VOC and for the website,

which is supported by contributions made by those who support VOC and its publication of its

Bully list.

69. Defendants' actions were taken intentionally and with malicious intent, ill-will and evil

motive, as stated above.

70. The Proposed Class has been damaged in fact by the use of their likeness, in that each

has been publically labeled a "Bully" in an effort to advertise and collect donations, and the

measure of their damages collectively is the donations received by VOC which stems directly

from the listing of the Proposed Class' names and likenesses on its Bully List.

WHEREFORE, Representative Plaintiffs each seek $100,000.00 in damages and the

Proposed Class seeks an aggregate of more than $13,200,000.00 in damages and collective

punitive damages of $30,000,000.00 against the Defendants, jointly and severally.


## COUNT II – Invasion of Privacy (Intrusion Upon Seclusion)

71. Representative Plaintiffs restate and re-allege the contents of paragraphs 1-62 of this

Complaint as if the same were set forth here in full.

72. Defendants have intentionally sought personal information of the Proposed Class from

closed, private social media groups (through a person or persons posing as members of the anti-

abortion movement) and then publicized that information on the VOC website.

73. Defendants publicized personal information not meant for public use (including full

names, marital status, home address, personal and family photographs, personal email addresses

and home phone numbers.)

74. Such facts were not of valid concern for the public.

75. Publication of such facts would be highly offensive to any reasonable person, and was in

fact offensive to each member of the Proposed Class.

76. In fact, Stave and VOC have admitted that the tactics and publicity-related actions that they are performing, were considered offensive when Stave endured similar (albeit protected) conduct.

77. Defendants' actions brought unreasonable publicity to the private lives of the Proposed Class.

78. The Defendants caused the Proposed Class harassment, annoyance and emotional distress and fear of retaliation by abortion supporters.

79. Defendants have done the aforesaid in order to use the name and likenesses to accrue commercial and monetary benefit to themselves.

80. Defendants' actions were taken intentionally and with malicious intent, ill-will and evil motive, as stated above.

81. Members of the Proposed Class have been damaged by being publically labeled a "Bully" and having their private information published on the VOC website, placing each in imminent fear of bodily harm for themselves and their families.

WHEREFORE, Representative Plaintiffs each seek $100,000.00 in damages and the Proposed Class seeks an aggregate of more than $13,200,000.00 in damages and collective punitive damages of $30,000,000.00 against the Defendants, jointly and severally.


## COUNT III – Invasion of Privacy (False Light)

82. Representative Plaintiffs restate and re-allege the contents of paragraphs 1-62 of this Complaint as if the same were set forth here in full.

83. Defendants have intentionally sought personal information of the Proposed Class from closed, private social media groups (through a person or persons posing as members of the anti-abortion movement) and then publicized that information on the VOC website.

84. Defendants publicized personal information not meant for public use (including full names, marital status, home address, personal and family photographs, personal email addresses and home phone numbers.)

85. Defendants then list each member of the Proposed Class as a "Bully".

86. Webster's Dictionary lists the noun "Bully" to mean:

"a blustering browbeating person; *especially* : one habitually cruel to others who are weaker; a pimp; or a hired ruffian."

87. Members of the Proposed Class are not "Bullies".

88. Protesting at an abortion clinic, which is protected by the First Amendment, does not make someone a "Bully".

89. Defendants have placed the members of the Proposed Class in a "false light" by attributing to each false characteristics, conduct and beliefs.

90. Referring to or publicizing any reasonable person as a "Bully" is unreasonably offensive *per se*, and was in fact offensive to the Proposed Class.

91. In fact, Stave and VOC have admitted that the tactics and publicity-actions they are performing, was considered offensive by Stave, and would be so to any reasonable person, in light of the customs of the time and place of the alleged publication.

92. The Defendants have caused the members of the Proposed Class harassment, annoyance and emotional distress and fear of retaliation by abortion activists.

93. Defendants have done the aforesaid in order to use the labeling of the Proposed Class as Bullies to accrue commercial and monetary benefit.

94. Defendants' actions were taken intentionally and with malicious intent, ill-will and evil motive, as stated above and with actual knowledge of the falsity of such information or with reckless disregard for the truth thereof.

95. The Proposed Class has been damaged in fact by each being publically labeled a "Bully" and having their private information published on the VOC website, placing each in imminent fear of bodily harm for themselves and their families.

WHEREFORE, Representative Plaintiffs each seek $100,000.00 in damages and the Proposed Class seeks an aggregate of more than $13,200,000.00 in damages and collective punitive damages of $30,000,000.00 against the Defendants, jointly and severally.


### COUNT IV – Defamation

96. Representative Plaintiffs restate and re-allege the contents of paragraphs 1-62 of this Complaint as if the same were set forth here in full.

97. Defendants listed each member of the Proposed Class as a "Bully".

98. Webster's Dictionary lists the noun "Bully" to mean:

"a blustering browbeating person; *especially* :  one habitually cruel to others who are weaker; a pimp; or a hired ruffian."

99. Members of the Proposed Class are not "Bullies".

100.       Protesting at an abortion clinic does not make someone a "Bully".

101.       Calling any reasonable person a Bully is offensive *per se*, and was in fact offensive to members of the Proposed Class.

102.       In fact, Stave and VOC have admitted that the tactics and publicity-actions they are performing, was considered offensive by Stave, in light of the customs of the time and place of the alleged publication and thus the statement is *per se* defamatory.

103.       The Defendants have caused the Proposed Class harassment, annoyance and emotional distress and fear of retaliation by abortion supporters.

104.       Members of the Proposed Class are private citizens.

105.     Defendants' actions were taken intentionally and with malicious intent, ill-will and evil motive, as stated above and with actual knowledge of the falsity of such information or with reckless disregard for the truth thereof.

106.     The Proposed Class has been damaged in fact by being falsely and publically labeled a "Bully" and having their private information published on the VOC website, placing each in imminent fear of bodily harm for themselves and their families.

WHEREFORE, Representative Plaintiffs each seek $100,000.00 in damages and the Proposed Class seeks an aggregate of more than $13,200,000.00 in damages and collective punitive damages of $30,000,000.00 against the Defendants, jointly and severally.


**COUNT V – Civil Conspiracy**


107.     Representative Plaintiffs restate and re-allege the contents of paragraphs 1-62 of this Complaint as if the same were set forth here in full.

108.     As set forth above, the Defendants' acts were wrongful.

109.     Defendants acted in combination (among themselves and VOC's thousands of minions) and by agreement or understanding to accomplish wrongful and illegal acts or used unlawful means to accomplish an act not itself illegal, as set forth above and below, and thus perpetrated a civil conspiracy in violation of Maryland's common law.

110.     Specifically, Defendants' and others also agreed to violate 18 U.S.C. §241 which provides that "[i]f <u>two or more persons</u> conspire to injure, <u>oppress</u>, <u>threaten</u>, or <u>intimidate</u> <u>any</u> <u>person</u> in <u>any State</u>, Territory, Commonwealth, Possession, or District in the <u>free exercise</u> or enjoyment of <u>any right or privilege secured to him by the Constitution</u> or laws of the United States, or because of his having so exercised the same . . . . <u>They shall be fined under this title or</u> <u>imprisoned not more than ten years, or both.</u>" (Emphasis added.)  Although this action has no

statutory civil action, Defendants' conspiracy to violate it is an actionably civil conspiracy in Maryland.

111.　　　Specifically, Defendants' and others also agreed to violate 47 U.S.C. §223(a)(1) which provides that the following are prohibited:

"(C)  making a telephone call or utilizes a telecommunications device, whether or not conversation or communication ensues, without disclosing his identity and with intent to abuse, threaten, or harass any specific person; (D)  making or causing the telephone of another repeatedly or continuously to ring, with intent to harass any person at the called number; or (E)  making repeated telephone calls or repeatedly initiates communication with a telecommunications device, during which conversation or communication ensues, solely to harass any specific person . . . ."  Although this action has no statutory civil action, Defendants' conspiracy to violate it is an actionably civil conspiracy in Maryland.

112.　　　 Specifically, Defendants' also agreed to violate Md. Code Ann., Criminal Law, §3-802 which makes criminal a course of malicious conduct to pursue or approach a person with the intent to place them in reasonable fear of an assault of themselves or a family member. Although this action has no statutory civil action, Defendants' conspiracy to violate it is an actionably civil conspiracy in Maryland.

113.　　　Specifically, Defendants' also agreed to violate Md. Code Ann., Criminal Law, §3-804 which makes criminal the misuse of telephone equipment or facilities to make "anonymous" calls reasonably expected to annoy, abuse or harass another or to make repeated calls with intent to annoy, abuse or harass another.  Although this action has no statutory civil action, Defendants' conspiracy to violate it is an actionably civil conspiracy in Maryland.

114.　　　Plaintiffs and the Proposed Class were damaged by this conspiracy.

115.　　　Acts in furtherance of the conspiracy occurred in Maryland.

116.        Stave has acknowledged publically that he was aided by Maryland "law enforcement" officials in his efforts to damage the Proposed Class.

117.        Such unknown law enforcement officials are part of the conspiracy and may be named as potential additional defendants after discovery ensues, with potential claims against the same under 42 U.S.C. §1983 and related law.

WHEREFORE, Representative Plaintiffs each seek $100,000.00 in damages and the Proposed Class seeks an aggregate of more than $13,200,000.00 in damages and collective punitive damages of $30,000,000.00 against the Defendants, jointly and severally.

## COUNT VI - Action for Injunctive Relief

118.        Plaintiff incorporates paragraphs 1 through 117 above, as if stated here in full.

119.        Members of the Proposed Class have been and continue to be irreparably damaged by Defendants and they are entitled to injunctive relief pursuant to the common law.

120.        Members of the Proposed Class will suffer irreparable injury in that more persons continue to obtain their personal information via VOC's website and such damage is irreparable.

121.        No injury would be incurred by the Defendants, as the only relief sought by injunction is to refrain from actions they are otherwise not allowed to take.  In other words, Members of the Proposed Class merely seek an order compelling Defendants to act lawfully, including the removal of the offending information from the VOC website.

122.        The public interest would be greatly served because the Proposed Class Members are being harmed for exercising their First Amendment rights that need to be protected for the benefit of all, including those that may benefit from hearing Plaintiffs' various protected-messages.

123.    The ability to exercise such rights without fear of harassment (by private citizens and state-actors) is protected by Federal and State statute

124.    There exists a strong likelihood that the Proposed Class will prevail on the merits.

WHEREFORE, Plaintiffs demand preliminary and final injunctive relief against all Defendants to enjoin their further tortious conduct.


Respectfully submitted,

-slt- Steven L. Tiedemann
Steven L. Tiedemann, Esq.
D. Md. Bar. No. 24794

75 Aileron Court
Suite 8
Westminster, MD  21157
(443) 952-7101
(443) 952-7104
*steve@hardhatlegal.com*

Attorney for Plaintiffs